UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RONALD DALE BURSTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11CV221 HEA |
| | ) | |
| MISSOURI DEPT. OF CORR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff (registration no. 513412), an inmate at Southeast Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2].  For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $28.67.  See 28 U.S.C. § 1915(b)(1).  Additionally, the Court will order plaintiff to submit an amended complaint.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the

greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $143.33, and an average monthly balance of $104.08. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $28.67, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989); Denton v. Hernandez, 112 S.

-2-

Ct. 1728, 1733 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

## The Complaint

Plaintiff, an inmate at Southeast Correctional Center, brings this action under 42 U.S.C. § 1983 against several current and former employees of the Missouri Department of Corrections and Correctional Medical Services/Corizon. Plaintiff's allegations relate to several different occurrences at different facilities purportedly done by several different defendants.

For example, plaintiff first claims that in November of 2006 while incarcerated at Algoa Correctional Center, he was verbally harassed by a couple of inmates in the shower who told him they were just "playing" with him. Plaintiff states that he reported the shower "harassment" to correctional officer May, but that May failed to do anything about it. Plaintiff states that after his shower he told the inmates who had "harassed" him in the shower that they could smoke marijuana in his cell, and that after smoking with the men he passed out and later woke up and suspected that he had

been sexually assaulted. Plaintiff asserts that he reported the alleged sexual assault to defendants Unknown Reese and John Doe Sergeant, but that these defendants failed to do anything about the incident because they told him he had washed off any evidence that would have remained by taking a shower. Several months later plaintiff tested positive for HIV. Plaintiff asserts that the Missouri Department of Corrections facilitated an unsafe environment which led to the sexual assault at Algoa because there was no guard stationed on his floor, no locks on the cell doors and no monitoring cameras near his cell.

Plaintiff also complains that he was sexually fondled by a doctor employed by Correctional Medical Services, defendant James Cooper, during his incarceration in March of 2010 at Southeast Correctional Center. Plaintiff claims that defendant Cooper fondled his buttocks and penis during a medical exam. Plaintiff asserts that he reported the alleged fondling and that defendant Cooper was eventually removed from the institution, although plaintiff does not know if his removal was related to his own complaint. Plaintiff states that when he reported defendant Cooper's conduct he was told by a nurse employed by Correctional Medical Services that defendant Cooper had a history of inappropriate behavior.

Plaintiff additionally claims that in September of 2010, defendant correctional officer Daniel Smith "placed his life in danger" by telling other inmates he was a

"snitch" and that he had HIV, which caused other inmates to start harassing him and threatening him. Plaintiff attempts to assert a violation of HIPAA against defendant Smith, as well as an action for verbal harassment. Plaintiff also asserts that it is a violation of the DOC policy to disclose an inmate's health information.

Plaintiff asserts that from November of 2009 through July of 2010, defendant Michael Hakala, a doctor employed by Correctional Medical Services, failed to properly treat his HIV, causing him to suffer severe pain and chronic skin conditions. Plaintiff claims that defendant Hakala acted with deliberate indifference to his serious medical needs by failing to provide him with the proper treatment for his HIV.

Plaintiff states that in July of 2010, defendant Russell Graham, a doctor employed by Correctional Medical Services, was deliberately indifferent to his serious medical needs relating to a throat condition he suffered as a complication of his HIV.

Lastly, plaintiff claims that defendant Pamela Lacey, a nurse employed by Correctional Medical Services, provided him with the wrong medication on May 18, 2011. Plaintiff asserts that he takes over 20 pills per day for his condition and that the medication mix-ups have occurred before and resulted in exacerbation of his condition. Plaintiff claims that he has reported the mix-ups to supervisor Stephanie Novak but that she merely laughed at him and "did nothing about the matter."

Plaintiff asserts that defendant Novak has refused him medical treatment for his throat on more than one occasion despite an obvious need, and that she has acted inappropriately toward him, "blowing kisses" and "patting her butt." Plaintiff further claims that defendant Novak allows his HIV medications to run out, despite her knowledge that he must take his medications daily, and that she refuses to allow him to be seen by an HIV specialist, although she tells him that she has discussed his case with the specialist.

## Discussion

Plaintiff's complaint involves claims relating to at least two different correctional facilities and eleven different defendants. Moreover, the claims appear to span an almost six year period, which little or no relationship between the claims. Furthermore, as the complaint now stands, many, if not all, of plaintiff allegations fail to state a claim upon which relief could be granted.

For example, the complaint is silent as to whether defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is

-6-

the equivalent of naming the government entity that employs the official, in this case the State of Missouri and/or Correctional Medical Services.[1] Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id.

Likewise, plaintiff has not alleged a policy by CMS that caused his injuries. In Sanders v. Sears Roebuck and Company, 984 F.2d 972 (8th Cir.1993), the court held that a corporation acting under color of state law will be held liable under section 1983 only for its own unconstitutional policies or actions. "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." Id., 984 F.2d at 976. Thus, to state a viable claim against CMS for an injury caused by an unconstitutional policy, plaintiff must allege facts indicating the defendant doctor or nurse acted pursuant to an official CMS policy and the official policy is responsible for plaintiff being denied constitutionally adequate medical care. In this case, plaintiff has not done so.

Similarly, minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not usually rise to the level of an Eighth Amendment violation; thus, it is doubtful plaintiff can bring a claim against defendant Cooper or defendant Novak for such behavior. See, e.g., Berryhill v. Schriro, 137 F.3d 1073,

---

[1]A suit against MDOC is, in effect, a suit against the State of Missouri.

1075 (8th Cir.1998) (finding that conduct of prison employees in briefly touching inmate's buttocks, unaccompanied by any sexual comments or banter, was not sexual assault required to support an Eighth Amendment claim); Rhoten v. Werholtz, 243 Fed. Appx. 364 (10th Cir.2007) (unpublished) (finding inmate's allegations that while correctional officers conducted a pat down search, officer "slammed him against the wall, squeezed his nipples real hard, squeezed his buttocks, and pulled on his testicles real hard causing him a great deal of discomfort and pain," failed to state an Eighth Amendment violation); Jackson v. Madery, 158 Fed. Appx. 656, 661 (6th Cir.2005) (unpublished) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); Johnson v. Ward, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (unpublished) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment). And "verbal harassment" such as that alleged done by defendant Smith does not rise to the level required to establish a constitutional violation. See, e.g., McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993); King v. Olmsted, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or

-8-

if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right).

Likewise, the Court is not convinced that plaintiff's claims of deliberate indifference to his medical needs survive initial review with relation to his allegations against defendants Hakala, Graham, Lacey and Novak. It is true that a prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Alberson v. Norris, 458 F.3d 762, 765-66 (8th Cir. 2006). However, a prima facie case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and the "prison officials actually knew of but deliberately disregarded" that need. Id. Medical malpractice alone, however, is not actionable under the Eighth Amendment. Smith v. Clarke, 458 F.3d 720, 724 (8th Cir. 2006). For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003). Moreover, in the face of medical records indicating that treatment was provided and physician affidavits indicating that the

care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment. Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997).

Additionally, although the Court is sympathetic to plaintiff's allegations surrounding his alleged sexual assault, it is not convinced that he has stated enough factual allegations in his complaint to survive initial review of this failure to protect claim under § 1915. In a suit seeking damages from prison officials for subjecting him to cruel and unusual punishment by failing to protect him from assault by another inmate, a plaintiff must show something more than mere inadvertence or negligence. Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir. 1991) (quotations omitted). He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates. Id. (citations and quotations omitted). To establish "reckless disregard" by prison officials, an inmate must show that he was faced with a "pervasive risk of harm" and that the prison officials failed to respond reasonably to that risk. Id. (citations omitted) Moreover, a "pervasive risk of harm" may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution.

-10-

Id. (quotations omitted).  It is enough that violence and sexual assaults occur with sufficient frequency that prisoners are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures.  Id. (citations and quotations omitted).

Lastly, there is no private right of action under HIPAA, either via § 1983 or through an implied right of action.  See, e.g., Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Adams v. Eureka Fire Prot. Dist., 352 Fed. Appx. 137, 139 (8th Cir. 2009).  And a federal court's inquiry is not whether a prison regulation not to disclose medical information was violated but whether the Constitution was violated. Griffin-Bey v. Bowersox, 978 F.2d 455, 457 (8th Cir. 1992) (per curiam).

Despite the aforementioned and because of the serious nature of some of the allegations in the complaint, the Court will not dismiss the case at this time.  Instead, the Court will give plaintiff the opportunity to file an amended complaint.  Plaintiff shall have thirty (30) days from the date of this Order to file an amended complaint. Plaintiff is warned that the filing of an amended complaint replaces the original complaint, and claims that are not realleged are deemed abandoned.  E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation, 396 F.3d 922, 928 (8th Cir. 2005).  If plaintiff fails to file an amended complaint within thirty (30) days, the Court will dismiss this action without prejudice.

-11-

Plaintiff must, however, follow the Court's instructions relating to the filing of his amended complaint. Plaintiff is required to submit his amended complaint on a court-provided form, and it must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff must clearly state the defendants which he is pursuing allegations against, and he must articulate, for each of those defendants, the factual circumstances surrounding their alleged wrongful conduct. Plaintiff's failure to make specific and actionable allegations against any of the defendants will result in their dismissal from this case.

After the filing of plaintiff's amended complaint, the Court will review the amended complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and/or failure to state a claim. A claim and/or defendant must survive § 1915 review in order for plaintiff to proceed on those claims in this lawsuit.

Lastly, the Court wishes to remind plaintiff that he cannot normally seek to join claims against several different defendants relating to events arising at several different correctional facilities in the same lawsuit. Such pleading practices are not allowed, especially in prisoner actions where there could be an incentive to avoid paying separate filing fees. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (district court should question joinder of defendants and claims in prisoner cases).

-12-

In other words, plaintiff should only include in his amended complaint claims which arise out of the same transaction or occurrence, or simply put, claims that have some relation to each other. See Fed.R.Civ.P. 18(a) and 20(a)(2). Application of this rule will usually result in a complaint containing claims relating to just one correctional center, and usually to just one event or time period. If plaintiff wishes to pursue claims against numerous defendants at various different correctional centers, and the claims do not arise from the same transaction or occurrence, he should file his claims on separate complaint forms and seek to proceed in several new civil actions. In anticipation of such an occurrence, the Court will order the Clerk to provide plaintiff with several blank complaint forms.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $28.67 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

-13-

**IT IS FURTHER ORDERED** that plaintiff shall submit an amended complaint no later than thirty (30) days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Court shall mail to plaintiff five copies of the Court's form Prisoner Civil Rights Complaint.

Dated this 18th  day of January, 2012.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE